The case this afternoon is 4-19-0292 Huskins v. Tapley and Farm. On behalf of the appellant we have Mr. Reverso and Mr. Long. On behalf of the appellee, Mr. Reverso. May I please record Thomas Reverso, L.E.D. on behalf of Mr. Huskins, appellant, and plaintiff. At the outset, your honors, I request time for a rebuttal of two minutes. The case touched on both the duties and the authority of a clerical court in addition to two matters of Illinois policy that I feel can easily be harmonized. As to that first part, that touches on pretty much kind of Memorial Illinois law and what I mean by that is we reach back into the 19th century and I'm interested in that and regarding I think the Radloff case from 1902. Had an interesting, just quoting from it, it's a very short one, and no rule of court which authorizes a clerk to file, as of any other date, the debt on which they are to be received by him. And that was pertaining to what rules of court may or may not authorize a clerk to alter any part of the record. The proposition of law that derives therefrom is that a clerk has a duty under having the people to correct the record. But it still needs the authority of a non-proton order or a similar order in order to effect such a change. This takes us to policies specific to rule of law. Rule of law is a stated policy and I think it actually articulates very well in the dissent of the First Auto and this was quoting a previous Supreme Court case called Seckill. And the purpose of rule of law, the purposes, policy-wise that is, are to prevent unreasonable delay in prosecuting claims and allowing the defendant to research and investigate formerly defendants and to prevent the circumvention of the statute of limitations. Unlike Brzezinski and Christian, both of which were cases that followed Seckill, the case at bar did not approach the statute of limitations until much later. And so rule 103 standard was not applied and did not factor into the analysis of the seven factors. So the second policy concern does not get reached. Now it does. We have conceivably passed the statute of limitations, but to one of the relevant points in time of when this was being argued, we were still at the point before the statute of limitations concern was raised. As to the unreasonable delay, the defendant in this case had all types of insurance investigations going on, some of which were conceded in the various trial arguments and in the various affidavits. So to remove that aspect I think is probably the most germane part of tying it into the second piece of policy, which is Illinois favors trying to get some merits. And for that purpose, we look at the rule 103B policy. We see that it's satisfying. And we need to return to trying this case on merits. Getting into the seven factors that are part of Brzezinski and this entire project, we have the length of time on which I would say, if not tolling, something analogous to tolling as a concept occurred here. Mr. Leopas, and through the ear of the clerk, and through what was ever presented online to anyone that looked at the records, through the clerk's website, saw that the defendant had been served. When it became apparent that he had been served, Mr. Leopas immediately resumed his touches on the factors of the activities of the plaintiff. The plaintiff was busy looking for a more invasive defendant who was not, as of my knowledge today, been served or is in the process of being served. And whether or not, you know, Mr. Leopas knew the defendant's location, there was an assertion that it could have easily been looked up at the Secretary of State. However, nobody presented any evidence for or against that the Secretary of State records were actually up to date on Mr. Chaffee's residence. Well, looking at the records that are on file, as of June 8th of 17, which was about two weeks after the initial entry, you could have seen that the Sheriff's Office return of service clearly says, not good address, wrong address. As to the Sheriff's Office versus the clerk, Your Honor, most, if not all, attorneys perform due diligence in checking the clerk's records. You didn't check the clerk's records, you just looked at the electronic file. That is my understanding. Mr. Leopas and his office did, Your Honor. And if you had pursued a default judgment, you would have had to have shown that there had been service, right? Had Mr. Leopas pursued a default, I imagine he would not only have to show service, but also that some form would be affidavit from the Sheriff's Office as part of that summons, yes or no? So he thought service had been made, right? Based on the records of the clerk's office, yes, he did. Yet the next most recent action was when? My understanding was that was the late 2018 issuance and summons. To the same address? At first, the same address. Then the due diligence he exerted on that made him discover the initial address was wrong, and the subsequent address was correct. So what about the period between July 13th of 17 and late April of 18? Late April, so that's approximately 10 months, and I believe Mr. Leopas was attempting to find the Palms or Pounds defendant. Although there's no entry as to that defendant either until you sought an alias summons for this defendant in May of 18. The summons... There's no other action in the court file. Yes, Your Honor, you are correct. There's no other action. The action in the court file is to the other defendant until you go to get another alias summons for this defendant at the wrong address. That is my understanding. Based on the record we have in front of us, that is my understanding. Okay. What I would say is that Mr. Leopas did file an affidavit stating that they were investigating that second defendant, which was his rationale. During that 10-month time, they had sought to investigate their whereabouts. Returning to the factors, that would be one of the ways of whereabouts are as you can. I think from our colloquy there that we've shown that maybe it wasn't that easy. And maybe there was... You take a different view of our colloquy than I do. I apologize, Your Honor. You take a different view of our colloquy than I do. I understand that. The actual knowledge that is to the defendant of the case, though, I think is conspired. Here he is undergoing all sorts of insurance investigations regarding the accident. He could... And it is a disparate standard, Your Honor, and rightfully so, I would add, that the plaintiff has a duty to seek out and correctly serve the defendant. But the actual knowledge of the defendant is an equally interesting counterbalance to that. In as much as the defendant could, knowing that there are investigations going on, easily look at the same court docket or clerk's website. How does he know? Pardon? How does he know? You're guys drive in a semi. Yes, Your Honor. Tapley... Tapley is in the third vehicle back. Yes, Your Honor. That hits another vehicle, and that vehicle then hits your semi. Yes, Your Honor. And you're all traveling in the same direction. Yes, Your Honor. How does he know there's an investigation going on? Your Honor, there were traffic reports filled out. There were insurance telephone calls. There were all sorts of... What I would say is the... First of all, there's no reference in the record to any telephone calls at all. Well, Your Honor, with the primacy of the case, we didn't get to that point. I'm sorry. You just said there were telephone calls. I'm just taking what you just said. I understand that may be a reference to things that were outside of the record at the bar, but it doesn't change the fact that they happened. Okay. Well, you said outside of the record. If I may, though, Your Honor, where I was going with the point is that when a car accident occurs, there are police on site, there are insurance telephone calls made, not the least of which Mr. Tapley, as I am familiar with insurance contracts, he probably had that duty and probably did call his own insurance on the accident. So... Sir, you would have had a police report that included his name and address and his insurance card. Would we have been able to seek that? Yes. Would we have it? I do not have Mr. Leopold's file in front of me, but... It wouldn't have been on your client's copy of the police report? I believe my client's copy of the police report led the investigation to the old address. So he would have also had the insurance card? Yes, Your Honor. Okay. So, for a charge of that, I think the defendant would also be alerted that, hey, there might be litigation, and he could very easily go to the public's website. Even though... See, he's not invested with the responsibility of notifying anybody other than his insurance card. And I return to that, but as to the factor analysis, I think it is worth mentioning that it says, in these cases we're saying, the Brzezinski case, the Christian case, that the factor is actual knowledge of the incident or actual knowledge of the lawsuit. And the trial court made a factual finding in its order that Mr. Tapley had no knowledge of the existence of the lawsuit until such time as he was ultimately served. The... I remember the record stating that argument, that when it was argued, I did not see a factual finding. Why not? Okay. And then with regard to actual service, we are here before you today because actual service did occur. Regarding the special circumstances, I think that with Mr. Tapley moving at the time of the accident, it did cause confusion as to his address. And I think Mr. Lief has correctly argued that point. Page 5 of the order, last paragraph before the conclusion. Yes. Finally, Defendant Tapley had no knowledge of this pending lawsuit until he was served on September 14, 2018, more than three years after the collision and almost 15 months after the limitation period expired. That looks like a finding by the trial court to me. And that factor was against us. And I would actually contest that that is another error. I think Mr. Lief should at least be allowed the opportunity to contest that factor with some discovery. Having said that, I didn't write the order. He wrote the order a year ago, two years ago. So if there's some contest to the order, I would think that would come up before now if he wanted to attack the order directly. I will ask Mr. Lief to say his trial strategy and possibly a supplemental record as to his investigative findings. Go ahead. As to the record itself, I'd just like to also point out, and then I will allow my opponent to go, there was no notice by the court directly to the parties of the error. And that includes the plaintiff and the defendant. The court assumes that they simply corrected the online error. As to the contest of the online docket's appearance, well, no affidavit directly addressed what Ms. Moshes saw. And Ms. Moshes was never posed on that point. There was no – and this is Mr. Lief's assistant. And for her, you know, in how she checked the record, she went to the court's website. So I would just like to point out the show has been MSR32 on the record. And so as to those two points there, I would just like the court to be aware of that. With that, Your Honor, I would like to allow my opponent to speak and to serve that rebuttal time. Thank you, Mr. Reverso. Thank you, Your Honor. Mr. Long. Good day, Mr. Court. I believe Judge Hunsted gave a very concise order, very in-depth, just to get all the factors here. In addressing the – the factors are all in favor of the defendant here. And you can follow the case law. Length of time to obtain service was 16 months after the statute of limitations expired. The activities of the plaintiff weighed against the plaintiff. I don't know what went on in the plaintiff's attorney's office. I do know that there appears to have been a change to the online record. But when I started practicing online records were a new thing. And we – as I understand, you were responsible for checking the docket. Plus – personally, plus there's a document in the docket that Your Honor held up that showed an affidavit of non-service. That was clear and concise. It said wrong address, not served. So there's that. But then we get to the idea of the traffic that was issued in this case to my client in Douglas County. He had a traffic case for it. He pled guilty to one of the offenses he was charged with. And as part of that plea, he updated his correct address to where he was eventually served at. That was on file well before this case was even filed by the plaintiff's counsel. So – Counsel, just so I'm following. The traffic ticket that you're referring to was a traffic ticket issued as a result of the accident? Yes, Your Honor. Okay. And that's where the correct address was found within that traffic ticket? I don't know where they found the correct address, Your Honor. I heard the affidavit of Mr. Leopold. They indicated finally that they did a skip trace and found my client's address. Now, I'm not going to pretend like I know exactly what goes into a skip trace. I know I've hired private investigators and they find an address when I can't find one online. However, there was a public record, an online record, no less, in the county where the accident occurred that had the correct address prior to suit being filed. The plaintiff could have brought suit in Douglas County or in Champaign County. My client resides in Champaign County and is hired in Champaign County in the entirety of this case. Well, did your client get two traffic tickets? Is that what you said? I believe so, Your Honor. And did your client plead guilty to the traffic ticket? He did. Well, that would at least be a target of why your client might think that there was a forthcoming lawsuit, maybe. Maybe, Your Honor. At the same time, I guess it's not the record. I will just say that most of the people I'm pretending to represent had no idea there was a lawsuit until they were actually served. So, I know that from my work, but I don't know that the general population knows that height. So, the idea that my client should be looking for something that he doesn't necessarily expect is a little out there from my perspective. Plus, my client hit another vehicle that then hit the semi, which is where the plaintiff was located. So, there's that. But I don't need to really get into things outside of the record. The record's pretty clear because they had the opportunity to have the correct address when the lawsuit was filed. Not through the Secretary of State. Through the county circuit clerk where the accident occurred. They chose to go to a different county. But if they would have filed it here, you could have easily found that there. With an internet search, personally, period, making a phone call, anything like that. But then we get to the Champaign County Sheriff's Affidavit of Non-Service. They never even looked at that, never requested that. I don't care what any circuit clerk says. I want to see the document that shows the defendant was served in a lawsuit so I can view it myself. If they would have taken the time to actually get that from the Sheriff's Office, request a copy from the Champaign County Circuit Clerk, or make the trip to actually physically view the case file, they would have seen that the docket was incorrect for that, I guess, six-week period. But then it was corrected to show non-service. And then there was, again, nothing done. And Judge Olmstead felt that those delays that were involved there were problematic. But then we look at what the plaintiff did when they found out, for whatever reason, there was no service on my client. They issued an alias summons. Where was the alias summons issued for? My client's long address, no longer there. Not only was that problematic, but after that Affidavit of Service, which is in the record as well, or non-service, says, Mr. Catley hasn't lived at that address for a long time, don't know who that is. Plaintiff's counsel's response to that Affidavit of Non-Service was to file a motion claiming that my client was willfully attempting to evade service. Despite clear evidence of the contrary with the first summons that showed it wasn't served and the second. He actually filed an Affidavit. And in the Affidavit he claims that the defendants were taking extreme measures to evade service. Yes. Was there ever any evidence presented to the trial court by anybody as to what the nature of these extreme measures to evade service was? Or. I guess I would have to look at the record. I do know. I do know what they're talking about because there is an Affidavit of Non-Service on this parm. Where there's correspondence we can apologize. The Affidavit went to both defendants. Right. Exactly, Your Honor. Well, Ms. Parham, I would agree, was taking extreme measures because there's an Affidavit from a Kentucky process server that says. Are you Kenneth Parham? Yes, I am. Here's a summons for you. And I'm not taking it. She sped off and drove away. I will concede that that is likely extreme measures to avoid service. And then nobody could get ahold of her since. But Ms. Parham, at the time of the accident and as far as I know now, is a Kentucky resident. There's an easy way to serve her. Always has been. Always will be. And, again, as far as I know, hasn't been done. And that goes to the idea that plaintiff was doing something appropriate here. I believe in the hearing, Mr. Diopas said he was waiting to have both defendants served before doing anything with my client. When he thought there was service. I find that hard to believe because, again, out-of-state defendants can be served via the Illinois Secretary of State. There's proper procedures to do. And she could be a party at any time. But that wasn't done. So what were the extreme measures to evade service that the attorney swore your client was taking? I have no idea, Your Honor. Did he present you? No. Not that I'm aware of. That was all before my involvement in the case, as well, Your Honor. And as far as once I've been involved in the case, Mr. Diopas made no reference to that in the arguments that I was involved in. In fact, I think once Judge Olmstead required him to file an additional affidavit about what those extreme measures were, that's when the skip trace was performed, at least based on the timeline of facts that are in the record, where my client was located at the address where he was hoping to serve, where he was living since the day of the accident, which had been on file in Douglas County well before the lawsuit. So I guess my argument would be with these facts, we can reach some conclusions, and I don't think they're putting forth their best arguments. I think it sounded good that the defendants were using extreme measures to evade service, but I don't think the facts carry that out, especially not the facts in the record. But, again, the factors favor my client, length of time, activities with the plaintiff, which we've kind of discussed, plaintiff's knowledge of the defendant's location. I agree, it seems like they did not know where my client was, but as Judge Olmstead put in his order, it could have easily been found. In his order, Judge Olmstead charitably referred to the comments in the affidavits as uninformed and unsupported assumption. I agree with the Court's assessment. Okay. Ed. Well, should the circuit clerk have given the notice of correction since the circuit clerk had written since service had been obtained and subsequently found out that that was a mistake? Well, Your Honor, I don't know what the circuit clerk should or should not have done. That's arguably not really relevant to my client. I've not been a circuit clerk, I've not worked in a circuit clerk's office. I know what the plaintiff's attorney should have done, in my opinion, which is, again, viewed the document from the Champaign County Sheriff's Office. That would have answered any question about whether or not there was service. If he did this plain as day, in two different locations on the affidavit of non-service, that the address is not good and no longer there. And then, when we find out, we're focused on an issue. Basically, the plaintiff's position is it's not my fault, it's somebody else's responsibility, I didn't do my job. Well, let me come from a different angle. When the circuit clerk makes the notation that the service was had upon a defendant, the circuit clerk doesn't send a notice to the plaintiff or the plaintiff's attorney that service has been accomplished, does it? I don't believe so, Your Honor, but I don't know. But what I do know is that... Well, if it doesn't send a notice, I guess I would suggest that they wouldn't send a notice of correction either. Well, and they certainly wouldn't send a notice to my client. No, not your client. And I can get it for the exact language, but the affidavit of non-service, the original one says, make sure you have your address correct with your payment because we're going to send this back to you. So in the record, what is in the record in the way of an affidavit of service or non-service? To be fair, though, that period of time between the date of the entry of June 8th and the correction on July 13th, the judge did not hold against the plaintiff. Correct, he did not, Your Honor. And he expressly pointed out that he's not holding that delay against the plaintiff at all. Correct, correct. And that was, like I said, Judge Olmstead's order was very thorough in that respect because he talked about the time that the record was corrected up to the point where a plaintiff somehow learned. The answer to your question, Justice Seres, is the affidavit of non-service. Yeah, but let me be clear because I did ask what's in the record. What was presented to Judge Olmstead in terms of what plaintiff's attorney had in his possession? Was there any evidence that plaintiff's attorney received the affidavit that your client was not served? There is no evidence of that in the record, but there's no evidence that he didn't get it either. Well, it's also, it's got the bill. I mean, at the $39, what evidence was there in regards to payment of the bill? It says balance due zero, so they were paid. And what I was referring to, Your Honor, is at the bottom of the June 8th, 2017 affidavit of non-service, it is important that this sheet is attached to your payment. It will be referred to you with your receipt. So we can maybe infer that this affidavit of non-service was returned to plaintiff's attorney? That would be my argument, Your Honor. I think, in fact, to bear that out, that's a more than reasonable conclusion. But in terms of what was presented to Judge Olmstead, did Mr. LaVerso, excuse me, Mr. Leopas, did Mr. Leopas indicate that he ever contacted the Sheriff's Office to obtain information regarding the status of service of summons, or if he ever received the affidavit of non-service? The record is unvoided of any reference to that from Mr. Leopas, which my argument would be he took no steps to work on this case the way, in my opinion, he should have. I mean, Judge Olmstead stated in paragraph H of his order, neither Mr. Leopas nor his assistant confirmed service by checking the summons return actually filed or contacting the Sheriff's Office directly. They relied solely, I'm adding solely, but it says they relied on the docket entry. So again, it's somebody else's fault, not mine, that I didn't do my job. And then this is where Judge Olmstead's real problem was from July 13th to so late, April of 2018, plaintiff's counsel did not seek a default judgment against the defendant. The defendant has not taken any action to prosecute the lawsuit or check the docket entries in the case. So if my client had served and I had that delay, I could have eventually been up here. I could have filed a motion to dismiss for one of prosecution as well, but the court didn't have jurisdiction over my client, so I didn't do that. Obviously, this was going to appear. I took the remedies available to me on behalf of my client when he was finally served, and again, those factors of the cases all favor my client. Judge Olmstead, you know, in his analysis, while plaintiff could reasonably rely on mistaken docket entries four times, he cannot excuse the excessive delay before a defendant was served in this cause. Plaintiff stopped paying attention to this matter for months after this mistake was corrected. It could have easily been and should have been discovered, followed by additional months when plaintiff used an incorrect address, when the correct one also easily could have been discovered. Plaintiff failed to exercise reasonable diligence. For purposes of the Supreme Court Rule 103B analysis, it's also relevant that the lawsuit itself isn't filed until just a month or less before the statute runs. So all of the actions essentially take place after the statute of limitations is run. Correct, Your Honor. What is the rationale for that latter point? Why is that a consideration in determining due diligence in terms of service of process, when during the statute of limitations the complaint was filed? Well, my understanding of the case law, Your Honor, is if we get these issues figured out and find out service wasn't effectuated, basically, Your Honor, they can get service and they're still within the statute of limitations. The idea of 103B is to prevent unreasonable delay in investigation. So it's not that you can take into account that the plaintiff filed towards the end of the statute of limitations and that somehow suggests that the plaintiff was dilatory, and then in that way it can be inferred that he was also dilatory in service of process. The timing of the filing of the complaint doesn't have anything to do with the later determination of diligence in the service of process. I believe so, Your Honor. My understanding has always been I try to serve someone as quickly as possible. If I get someone's return not served, there are steps I need to take. It may be repetitive and lead to nothing if I can't keep serving the person at the right address, but eventually there are remedies to present to the court if you do feel that there's an attempt to evade service or we need to try some other means of service of process. The plaintiff did that in this case with things that I don't believe Judge Olta didn't find credible. So, again, the amazing thing, Your Honor, is that Judge Olta didn't like the result that he reached, but he felt compelled based on the precedent and the facts involved in this case that it was the proper remedy. There was clear lack of diligence in service of process. If they would have paid attention to their case or paid attention to the docket or even contacted the sheriff or contacted the clerk to have them read the document, we wouldn't be here, Your Honor. So I would ask that Judge Olta says order dismissing this matter to the federal CFO. Thank you, Mr. Long. Mr. Reverso. Thank you, Your Honor. With regard to my two minutes, I'd like to both address Justice Harris's point as to, you know, when you back this against the law and that it's a statute of limitations, the program of limitations may or may not be. And secondly, perhaps there's another attorney in the audience, but I'd like to rectify a point that was argued as to the evasiveness point. Mr. Leopolis' record does clearly indicate this in the transcript, clarified that his affidavit was incorrect as to Mr. Chapley. So I don't want the record here referring to something that Mr. Leopolis corrected after him. He did say that the evasiveness pertained to Mr. Long, and he did clarify that in the transcript. So I don't want – again, I don't know if that was the same attorney that's here today, but Mr. Leop – it is a black and white, so I don't want that to get lost in the middle of it. As to Justice Harris's point, I believe, Justice Harris, that that final factor, that consideration is we would, before having plaintiffs start filing, to kind of capture everyone under the sun right up against that statute of limitations. So I think the reason that that particular factor is considered is with regard to a mindset of diligence. Was the plaintiff investigating the whole time, or did they wake up, see that there was a statute of limitations above the total, and then sue everyone under the sun? And that can show a lack of diligence, I believe. So with regard to that, I would like to use some of my father's wisdom here, which is just a quick analogy, and that is, with regard to basketball, we're the best ball team in the country. Bradley, one cool thing that he always taught me is the referee is the land spot on the scoreboard. And a clerk of court, by way of that analogy, isn't even the referee. It's the scorekeeper on the sideline there. So they had a duty to correct the record, but they needed the authority of the pro tempore. And that's having a referee give an indication on that. So I think it would not be just result to let the clerk of court have an indication, have a weigh-in on whether or not the plaintiff, and by extension the defendant, have an indication on that. With that, is there any other questions? Well, then what do you think it means when the docket enter reflects that it's being made by Judge Jeffrey Ford? I didn't – there was – you know, I'm just saying it personally. Go ahead. It's not made by me. That docket entry really wasn't clear whether or not Judge Ford entered a non-pro tempore. I went through the record. I did not see a non-pro tempore enter. He's just authorizing the clerk to make the correction? If that entry had reflected that, I would have noted that. I guess the bigger question is, what does it matter? Because you didn't look at it anyway until April of the next year. Right? Well, no, Your Honor. As to the docket at the courthouse, I believe that statement is accurate, but I returned to what was available online, and Mr. Leofis and Ms. Masch just indicated that they were checking it. But they did look at it. In April of 2018? I think the entire time, Your Honor, because they were looking for stress on this document. That was what the update indicated. Okay. Thank you, Your Honor. Thank you. Thank you, counsel. We'll take the matter under advisement to recess briefly.